# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KATHARINE J. WEBER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 5607 |
| v. ) | |
| ) | Wayne R. Andersen |
| UNIVERSITIES RESEARCH ) | District Judge |
| ASSOCIATION, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Katharine J. Weber ("Weber") filed this action against defendant Universities Research Association, Inc. ("URA") alleging sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*. This matter is before the court on URA's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the motion is granted.

## BACKGROUND

Weber began working for URA's Fermi National Accelerator Laboratory in 1986 as an Engineer in URA's Mechanical Support Department, which is a part of URA's Accelerator Division. In 1996, Weber was charged with implementing a URA computer system known as CMMS. As project manager for CMMS, Weber was responsible for collecting information about equipment owned by the Accelerator Division and inputting that information into the CMMS database. While project manager, Weber reported to Dave Augustine ("Augustine"), who in turn reported to Fritz Lange ("Lange"), Head of the Mechanical Support Department,

who in turn reported to Paul Czarapata ("Czarapata"), Associate Division Head of the Accelerator Division.

In or around February, 2004, URA shut down the CMMS project and removed Weber from her position as CMMS project manager.  URA offered Weber a choice of two different positions: an Engineer II position under the supervision of Christine Ader ("Ader"), another Engineer II, or a Building Management position.  On March 8, 2004, Weber accepted the Engineer II position and began reporting to Ader.  Neither Weber's job classification nor her salary changed as a result of this change in position.

On March 8, 2004, Weber and Ader met to discuss Weber's first work assignment.  On March 29, 2004, Ader issued Weber a written reprimand for insubordination which alleged that Weber failed to follow Ader's instructions and failed to complete the assignment that Ader gave Weber on March 8.  Soon after that written reprimand was issued, URA moved Weber's office closer to Ader's.  Soon after Weber switched offices, Ader reported to Czarapata that Weber was spending a lot of time on Weber's computer, but that she was not finishing her work.  Czarapata suggested and authorized that URA place an internet trace on Weber's computer for five business days between May 11, 2004 and May 18, 2004.  For the five days that were monitored, URA's records showed that Weber spent approximately 16.25 hours on the internet visiting Web sites unrelated to her work at URA, namely dog-related Web sites and personal email accounts.

After conducting a further investigation, URA discovered that Weber was employed outside of URA and had a dog training business by the name Kay-9 Petiquette.  When questioned by URA, Weber admitted to having the business.  At all relevant times, URA had in place an Outside Employment policy which provided, in relevant part, that "[URA] does not favor outside employment.  An employee who undertakes outside employment without notice to

and authorization by [URA] is subject to discharge." The policy further provided that an employee could obtain authorization from URA for outside employment by completing an Outside Employment Form. URA also had in place a policy on computing which prohibited computer activities in support of an ongoing private business. Weber admitted to URA that she did not submit an Outside Employment Form and that she was aware of URA's policies regarding outside employment and computing.

On May 25, 2004, Lange advised Weber that he was suspending her and recommending that she be fired for failure to notify and obtain authorization from URA for her outside business and for Weber's use of URA's equipment in support of an ongoing private business. Weber was given an opportunity to respond, and she did so by letter in which she alleged that her firing was the result of sex discrimination and that Lange was retaliating against her for complaints of discrimination that Weber made in the early 1990s. In that letter, Weber also identified eight male employees who she alleged also had outside businesses but were permitted to conduct them while on URA premises. URA conducted an investigation into Weber's allegations and concluded that the employees named by Weber had not engaged in the same conduct as Weber. URA fired Weber via letter on July 2, 2004.

On June 14, 2004, prior to being fired by URA, Weber filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that she was subjected to sex discrimination at URA and was suspended in retaliation for complaints of discrimination that she made in the early 1990s. On February 3, 2005, after she was fired, Weber again filed a charge of discrimination with the EEOC, this time alleging that she was fired in retaliation for her complaints of discrimination. On July 6, 2005, and July 11, 2005, Weber was issued Notices of Right to Sue from the EEOC. Weber filed this action against URA on September 28, 2005

alleging sex discrimination (Count I) and retaliation (Count II) in violation of Title VII. URA now moves for summary judgment on all counts.

## DISCUSSION

*A.     Legal Standards*

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the nonmoving party must present definite, competent evidence to rebut the summary judgment motion. *See Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). The court considers the evidence in a light most favorable to the nonmoving party and draws all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255.

*B.     Discrimination and Retaliation Under Title VII*

Weber alleges that she was subjected to sex discrimination while she was employed at URA and that she was fired in retaliation for her complaints of discrimination. In order to survive summary judgment on claims of discrimination or retaliation under Title VII, a plaintiff can proceed under either the direct or indirect method of proof. *Kampmier v. Emeritus Corp.,*

472 F.3d 930, 939 (7th Cir. 2007). Here, Weber concedes that she has no direct evidence of discrimination. Thus, we will analyze Weber's claims under the indirect method.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established the procedure for proceeding under the indirect method of proof. Under the *McDonnell Douglas* indirect method, the plaintiff must first establish a *prima facie* case of discrimination or retaliation. *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000). Once that is established, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the action. *Id.* If the defendant meets that burden, then the burden shifts back to the plaintiff to establish that the employer's proferred reason was a mere pretext for discrimination. *Id.*

    1.    Weber cannot establish her *prima facie* burden for either of her claims.

In order to establish a *prima facie* case of sex discrimination under the indirect method, a plaintiff must demonstrate (1) that she was a member of a protected class; (2) that she was meeting her employer's legitimate business expectations; (3) that she suffered an adverse employment action; and (4) that similarly situated employees outside of the plaintiff's class were treated more favorably. *Kampmier*, 472 F.3d at 939. Similarly, in order to establish a *prima facie* case of retaliation under the indirect method, "a plaintiff must show that after filing the [complaint of discrimination] only [s]he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though [s]he was performing [her] job in a satisfactory manner." *Id.* at 940 (quoting *Stone v. City of Indianapolis*, 281 F.3d 640, 644 (7th Cir. 2002)).

Here, Weber cannot meet her *prima facie* burden for either her sex discrimination claim or her retaliation claim because she cannot show that she was performing her job in a

5

satisfactory manner or that she was meeting URA's legitimate business expectations at the time she was fired. Weber admits that she owned a dog training business outside of her employment with URA and that she was aware of URA's policy requiring notification to and approval by URA of any outside employment. Weber also admits that she failed to submit an Outside Employment Form, as required by URA's policy. Weber further admits that she was aware of URA's policy on computing which prohibited computer activities in support of an ongoing private business. Yet URA's internet trace of Weber's computer showed that Weber spent over 16 hours over five business days searching dog-related Web sites.

Weber argues that her internet usage was done in accordance with URA's allowance for reasonable personal use of the internet. This argument is without merit, however, because, even if Weber had only used the internet for personal reasons, it was not unreasonable for URA to conclude that spending over 16 hours of one workweek on non-work related Web sites was excessive. Further, Weber's reliance on her past performance evaluations as evidence that she was performing her job satisfactorily is misplaced. The relevant inquiry is whether Weber was meeting URA's legitimate expectations at the time she was fired. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 680 (7th Cir. 2008); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004). Weber admits that she was aware of URA's policies regarding outside businesses and computing and that she could be fired for violating those policies. After an investigation, URA concluded that Weber had in fact violated those policies and fired her for those violations. The law is well settled that courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions. *See Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 693 (7th Cir. 2005). Under these circumstances, it cannot be said that Weber was

performing her job satisfactorily or that she was meeting URA's legitimate business expectations. Thus, Weber cannot meet her *prima facie* burden on either of her claims.

    2.    URA had a legitimate, non-discriminatory reason for firing Weber that was not pretextual.

Even if Weber was able to meet her initial *prima facie* burden, her claims would still fail because URA had a legitimate, non-discriminatory reason for firing her that was not pretextual. "A pretext . . . is a deliberate falsehood." *Adelman-Reyes v. St. Xavier Univ.*, 500 F.3d 662, 666 (7th Cir. 2007). To show pretext, a plaintiff must establish that the legitimate reasons offered by her employer were not its true reasons, but a pretext for discrimination. *Id.* Here, Weber argues that URA's stated reasons for firing her—namely, that she admittedly violated URA's policies regarding outside employment and computing—are pretextual because male employees were not terminated for violating the same rules. However, Weber has failed to submit any evidence that any male employees engaged in the same type or degree of internet activity or performed work related to outside businesses while on URA time. Weber also attempts to rely on complaints of discrimination that she made in the early 1990s to support her claim of pretext. However, those claims are time barred under Title VII and are nonetheless too tenuous to establish pretext for her firing in 2004. *See* 42 U.S.C. § 2000e-5(e)(1) (claims under Title VII must be brought within 300 days of the alleged unlawful employment practice). Thus, Weber has failed to submit any definite, competent evidence that would allow a jury to infer that her firing was a pretext for sex discrimination. Therefore, we must grant summary judgment in favor of URA on both of Weber's claims.

## CONCLUSION

For the foregoing reasons, defendant URA's motion for summary judgment [76] is granted with respect to all counts of Weber's complaint. This case is terminated.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: __March 20, 2008_____